IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| REBECCA FORD, ) | Civil Action No.: 4:05-cv-1893-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MCLEOD REGIONAL MEDICAL ) | |
| CENTER OF THE PEE DEE, ) | |
| ) | |
| Defendant. ) | |

Pending before the court is Defendant's [Docket Entry #21] motion for summary judgment.

## Procedural History and Factual Background

This action, which was originally filed in state court, was removed to this court on July 1, 2005. The Complaint alleges discrimination, retaliation and harassment in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("Report") on the pending motion on February 14, 2007, in which he recommended that summary judgment be granted in favor of the Defendant as to all of the Plaintiff's claims.

On February 26, 2007, the Plaintiff filed Objections to the Report. On March 14, 2006, the Defendant filed a Reply to Plaintiff's Objections to the Report.

The facts of this case are set forth in detail in the Report of the Magistrate Judge and do not need to be restated here. The court hereby incorporates by reference pages 1 through 8

of the Report. Report and Recommendation, pgs. 1-8 [Docket Entry #30].

## Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id*. However, the district court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47-48 (4th Cir. 1982).

## Analysis

Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo*

*Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

<u>Disability Discrimination Claim</u>

Plaintiff alleges that the Defendant discriminated against her because of her disability by asking her to step down from her position as Assistant Patient Accounts Manager to the less distinguished and non-supervisory position of Patient Accounts Representative ("PAR"), at the same rate of pay, and then giving her excess work when she refused to accept the demotion. In order to prove an actionable ADA violation, a plaintiff must establish that: 1) she has a disability; 2) she is a qualified individual; and 3) she suffered an adverse employment action that constituted unlawful "discrimination" based on her disability. *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683,

3

686 (4th Cir. 1997). For summary judgment purposes, the Defendant concedes that the Plaintiff has a disability and that she is a qualified individual under the ADA.

The Magistrate Judge recommended that Plaintiff's disability discrimination claim be dismissed because Plaintiff had failed to establish that she suffered an adverse employment action. The Magistrate Judge concluded that even though the Plaintiff was asked if she would consider taking a "reassignment" or "demotion" from her position as Assistant Patient Accounts Manager to the non-supervisory and less distinguished position of Patient Accounts Representative, the Plaintiff was never actually "demoted" or "reassigned." In fact, the Magistrate Judge stated, the decision was left with Plaintiff as to whether she wanted to move back to the Patient Accounts Representative ("PAR") position. Therefore, no adverse employment action took place.

In her Objections to the Report, the Plaintiff argues that the Magistrate Judge erred by not addressing the Plaintiff's claims of workplace harassment before concluding that she had suffered no adverse employment action. Specifically, the Plaintiff argues that the Magistrate Judge failed to consider the fact that after she refused to take the demotion, she was given excess work by her superiors in an effort to make her step down. Plaintiff argues that the "increased workload" constituted the adverse employment action. Plaintiff also alleges that after she refused to take the demotion, David Gasque[1] told her that Gary Morris[2] was going to increase her workload in an effort to make her step down. Gasque denies making the

---

[1] David Gasque was or is the Patient Accounts Manager and Plaintiff's direct supervisor.

[2] Gary Morris was the Director of Business Services during the relevant period of time; he resigned from his employment with McLeod on September 29, 2004.

4

comment. The Plaintiff then points to the deposition testimony of one witness who testified that Morris did, in fact, increase the Plaintiff's workload after her refusal to take the demotion.[3]

The court agrees with the Magistrate Judge that the Plaintiff did not establish that she suffered an adverse employment action, but for different reasons. An adverse employment action is a discriminatory act which "adversely affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). A plaintiff may establish an adverse employment action in the substantive discrimination context by showing an "ultimate employment" action that affects "hiring, granting leave, discharging, promoting, and compensating." *Brockman v. Snow*, No. 06-1004, 2007 WL 493926, at *2 (4th Cir. Feb. 13, 2007) (unpublished opinion) (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981)). However, an adverse employment action "need not be an 'ultimate employment decision' . . . , 'adverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment.'" *Gordon v. Gutierrez*, No. 1:06-cv-861, 2007 WL 30324, at *7 (E.D. Va. Jan. 4, 2007) (citing *Von Gunten v. Maryland*,[4] 243 F.3d 858, 866 (4th Cir. 2001)). For example, reassignment to a less appealing job must have a "significant detrimental effect," such as a "decrease in compensation, job title, level of responsibility, or

---

[3] *See* Deposition of Elizabeth Osborne, at pgs. 15-16, 18.

[4] *Von Gunten v. Maryland* was abrogated with the Supreme Court's decision in *Burlington Northern & Santa Fe Ry Co. v. White*, 126 S.Ct. 2405 (2006), but only as to the standard for adverse employment action in the retaliation context. *Von Gunten* is still good law regarding its discussion of what constitutes an adverse employment action in the substantive discrimination context.

5

opportunity for promotion" in order for it to constitute adverse employment action. *Boone v. Golden*, 178 F.3d 253, 256 (4th Cir. 1999). Even if the new assignment is more stressful than the old, such a reassignment is not an adverse employment action. *Id.* at 263.

Although the court is sympathetic to the Plaintiff's situation, the "increased workload" the Plaintiff alleges she was given after her refusal to take a demotion, without a change in pay, does not constitute an adverse employment action because there is no evidence in the record sufficient to show that it altered the terms, conditions, or benefits of her employment. The Plaintiff merely makes the allegation that she was given more work after she refused to take the demotion without pointing to any evidence in the record that indicates how much more work she was actually given. In some circumstances, an unreasonable increase in workload might alter the terms, conditions, or benefits of employment. *Jones v. Barnhart*, 349 F.3d 1260, 1269-70 (10th Cir. 2003). However, the Plaintiff in this case does not point to any evidence in the record that indicates the "increased workload" was unreasonable. The Plaintiff does not direct the court to any evidence of additional hours, assignments, etc. and makes no attempt to otherwise quantify the somewhat conclusory allegation of "increased workload." Conclusory allegations, without more, are insufficient to defeat a motion for summary judgment. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

Based on the record before the court, the "increased workload" Plaintiff has alleged seems to coincide with and arise as a result of the resignation of Edna Young[5] and the subsequent transfer of one or two PARs from the Plaintiff's commercial billing unit to the

---

[5] Edna Young was the Plaintiff's counterpart Assistant Patient Accounts Manager. While Edna Young was the Assistant Patient Accounts Manager of the government billing unit, Plaintiff was the Assistant Patient Accounts Manager for the commercial billing unit.

government billing unit. The Plaintiff admitted and the record indicates that other individuals, including Plaintiff's direct supervisor, also experienced an increase in their workloads due to Edna Young's resignation. The Plaintiff cannot show an adverse employment action because she has not shown any proof that her workload actually increased in any substantially greater proportion than any of her co-workers. *See Singleton v. Potter*, 402 F. Supp. 2d 12, 36 (D. D.C. 2005) (holding that Plaintiff did not show an adverse employment action based on increased workload because she has no proof that her workload actually increased in any substantially greater proportion than any of her counterpart's workload, and she did not have to work overtime to accomplish her assigned duties).

The Plaintiff claims that she sought psychiatric treatment for the stress associated with her "increased workload." However, the Plaintiff's subjective response to the stress she was facing at work is insufficient to establish that the terms, conditions or benefits of her employment were altered by the "increased workload."

Even assuming the Plaintiff has established a *prima facie* case of substantive discrimination, the Plaintiff's discrimination cause of action must still fail under the *McDonnell Douglas* burden shifting framework. The Fourth Circuit has held that the *McDonnell Douglas* burden shifting framework is applicable to appropriate claims brought under the ADA. *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 58 (4th Cir. 1995). "Under the *McDonnell Douglas* proof scheme, the plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence." *Ennis*, 53 F.3d at 58. If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory explanation that would support a

finding that the discrimination was not the cause of the employment action. *Id*. If the defendant meets this burden of production, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons are pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 530 (1993).

In this case, there appear to be legitimate, nondiscriminatory reasons for the "increased workload" experienced by the Plaintiff. The Plaintiff has not submitted sufficient evidence that the Defendant was intentionally discriminating against the Plaintiff by increasing her workload or that the legitimate, nondiscriminatory reasons for the increase in work were pretextual.

As stated above, the "increased workload" Plaintiff has alleged seems to arise and coincide with the resignation of Edna Young and the transfer of PARs from Plaintiff's commercial billing unit to the government billing unit. Edna Young's resignation and the vacancy it created were beyond this Defendant's control. As the Magistrate Judge pointed out, the Defendant began attempts to fill Ms. Young's position approximately one month before Ms. Young's employment with the Defendant ended. Furthermore, the Plaintiff admitted that, after Ms. Young resigned, "things really fell apart" in the government billing unit.[6] The Plaintiff further acknowledged that the transfer of a PAR from the commercial billing unit to the government billing unit was possibly needed because the government billing unit was more complicated than the commercial billing unit. The Plaintiff also acknowledged that the government billing unit may have needed an additional PAR after Edna Young's resignation. Finally, the Plaintiff admitted that other individuals, including Plaintiff's direct supervisor, also experienced an increase in their workloads following Edna Young's resignation.

---

[6] Deposition of Plaintiff, at pg. 62.

Even if Gasque told Plaintiff that "[Morris] is going to put more and more on you and try to get it to the point to where you're just gonna give up and step down,"[7] this isolated statement alone is not sufficient to show that the legitimate, nondiscriminatory reasons for the "increased workload" were pretextual reasons formulated and designed to conceal the alleged discrimination.

In conclusion, the Plaintiff has failed to establish a *prima facie* case of substantive discrimination because she has failed to establish that she suffered adverse employment action. Additionally, even if the Plaintiff has established a *prima facie* case, her discrimination claim must fail because under the *McDonnell Douglas* burden shifting analysis the Plaintiff has not shown that the legitimate, nondiscriminatory reasons for the increase in work were a pretext. There is no genuine issue of material fact as to whether the Plaintiff suffered an adverse employment action. Likewise, there is no genuine issue of material fact as to whether the legitimate, nondiscriminatory reasons for the Plaintiff's "increased workload" were pretextual. Accordingly, the Defendant is entitled to summary judgment as a matter of law as to the Plaintiff's discrimination claim.

Retaliation Claim

The elements of a *prima facie* case of retaliation are: 1) plaintiff was engaged in protected activity; 2) plaintiff suffered an adverse employment action; and 3) there is a causal nexus between the protected activity and the adverse action. *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991).

The Magistrate Judge recommended that the Plaintiff's retaliation claim be dismissed

---

[7] *Id*. at 77.

because the Plaintiff did not engage in "protected activity" by refusing to take the demotion and did not suffer any adverse employment action.  The Plaintiff objected arguing simply that she was engaged in "protected activity" when she refused to take the demotion.  The Plaintiff, however, cites no case law in support of the proposition that refusing to take a demotion is protected activity in this Circuit or any other Circuit.  This court agrees with the Magistrate Judge that the Plaintiff was not engaged in "protected activity" when she refused the demotion and incorporates by reference pages 13 and 14 of the Report. Report and Recommendation, pgs. 13-14 [Docket Entry #30].

However, the court disagrees with the Magistrate Judge that the Plaintiff suffered no adverse employment action.  It should be noted that since the Supreme Court's holding in *Burlington Northern & Santa Fe Ry Co. v. White*, 126 S.Ct. 2405 (2006), the standard for establishing adverse employment action in the context of a retaliation claim is different and less stringent than the standard for establishing adverse employment action in a substantive discrimination claim context.  In order to show that a plaintiff has suffered an adverse employment action in the context of a retaliation claim, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from" engaging in the protected activity. *See White*, 126 S.Ct. at 2415.  The Supreme Court specifically noted that their use of the phrase "materially adverse" was intended to separate significant harms from trivial harms. *Id*.  The standard is objective and should be considered in light of all of the circumstances and from the perspective of a reasonable person in the plaintiff's position. *Id*. at 2417.

Assuming for the sake of argument that the Plaintiff was engaged in "protected

10

activity," there is a genuine issue of material fact as to whether a reasonable person in the Plaintiff's position might well have been dissuaded from engaging in the "protected activity" if such a person were going to face an increase in their workload as a result.

However, even if the Plaintiff has established all of the elements of a *prima facie* retaliation claim, her claim must fail under the *McDonnell Douglas* burden shifting test. Plaintiff summarizes her retaliation claim in her Objections to the Report of the Magistrate Judge as follows:

> The Plaintiff developed MS.  After she developed this disability, the Defendant requested she take a demotion.  The Plaintiff refused.  After she refused to take this demotion, the Defendant increased the workload on the Plaintiff in an attempt to force her to accept the demotion or quit.

Plaintiff's Objections to Magistrate Judge's Report and Recommendation, at pg. 9 [Docket Entry #33].  Plaintiff's retaliation claim fails under *McDonnell Douglas* for the same reason her substantive discrimination claim fails under *McDonnell Douglas*.  Plaintiff cannot establish that the legitimate, nondiscriminatory reasons for her "increased workload" were pretextual.

In sum, Plaintiff's retaliation claim fails because she has not established that she engaged in "protected activity" by refusing to take the demotion and she has not established that the legitimate, nondiscriminatory reasons for increasing her workload were pretextual. Furthermore, there is no genuine issue of material fact with regard to whether Plaintiff was engaged in "protected activity" or whether the legitimate, nondiscriminatory reasons for increasing the Plaintiff's workload were merely a pretext.  Therefore, the Defendant is entitled to summary judgment as a matter of law as to Plaintiff's retaliation claim.

Hostile Work Environment Claim

To prevail on a hostile work environment claim based on a disability, a plaintiff must establish that: 1) she is a qualified individual with a disability; 2) she was subjected to unwelcome harassment; 3) the harassment was based on her disability; 4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and 5) some factual basis exists to impute liability for the harassment to the employer. *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001).

The Magistrate Judge recommended dismissal of the Plaintiff's hostile work environment claim because no reasonable juror could conclude that the alleged harassment was based on her disability or that it was sufficiently severe or pervasive to alter the terms and conditions of her employment. In her Objections, the Plaintiff argues that the Magistrate Judge failed to draw inferences her favor and resolved factual issues that should be submitted to the jury.

In concluding that the Plaintiff failed to present sufficient evidence that the alleged unwelcome harassment was based on her disability, the Magistrate Judge noted that "[t]he critical issue for consideration when determining whether unwelcome conduct is based on a plaintiff's disability is whether the plaintiff has been 'exposed to disadvantageous terms or conditions of employment to which [non-disabled employees] are not exposed.'" Report and Recommendation, at pg. 17 [Docket Entry #30]. The Plaintiff's Objections, however, do not specifically address whether she was subjected to disadvantageous terms or conditions to which non-disabled employees were not exposed. The Plaintiff has not come forward with sufficient evidence to show that she was exposed to disadvantageous terms or conditions of employment

to which non-disabled employees were not exposed. *See Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Thus, the Plaintiff has failed to establish that the alleged unwelcome harassment was based on her disability.

The Plaintiff's Objections seem to focus on the "increased workload" the Plaintiff experienced as the main basis for her hostile work environment claim; however, the Plaintiff does not address the fact that other individuals also experienced an increase in their workload as a result of Edna Young's resignation. Again, the Plaintiff offers insufficient proof that her workload actually increased in any substantially greater proportion than any of her co-workers. The Plaintiff also does not dispute the fact that after Edna Young's departure, the government billing unit began to fall apart and needed additional PARs.

The court agrees with the Magistrate Judge's analysis of Plaintiff's hostile work environment claim and therefore adopts and incorporates pages 14 through 17 of the Report. Report and Recommendation, pgs. 14-17 [Docket Entry #30]. Additionally, there are no genuine issues of material fact with regard to Plaintiff's hostile work environment claim and the Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim as a matter of law.

## Conclusion

For the reasons stated above, the court overrules Plaintiff's Objections and adopts the Report and Recommendation of the Magistrate Judge as modified by this Order. The court finds that there are no genuine issues of material fact and that the Defendant is entitled to summary judgment as a matter of law. Accordingly, Defendant's [Docket Entry #21] motion for summary judgment is **GRANTED** as to all of Plaintiff's claims.

**IT IS SO ORDERED**.

March 30, 2007
Florence, South Carolina

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Court Judge